IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:19-cv-679 |
| | ) | |
| 4.31 ACRES OF LAND, OWNED BY | ) | By: Elizabeth K. Dillon |
| JAMES T. CHANDLER AND KATHY E. | ) | United States District Judge |
| CHANDLER, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline.

MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to

acquire easements on numerous properties, including these properties located in Roanoke County

and owned by defendants/landowners James and Kathy Chandler.  On March 9, 2018, the court

entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to

Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 727), granting MVP immediate possession

of the easements on these properties.

MVP moves to exclude the expert testimony of Dennis Gruelle, for summary judgment on

the issue of just compensation, and to exclude various categories of evidence in an omnibus motion

in limine.  (Dkt. Nos. 16, 18, 20.)  Defendants move to exclude the expert testimony of Joseph

Thompson, to exclude certain evidence and testimony, and for a jury view.  (Dkt. Nos. 26, 31, 33.)

At the motions hearing, MVP represented that it did not oppose defendants' motion to exclude

certain evidence and testimony (Dkt. No. 31), and the court granted that motion by oral order (Dkt.

No. 42).  The other motions were taken under advisement.

The trial in this matter was originally scheduled for September 21, 2020.  On September 9,

2020, the court granted defendants' motion for a continuance, and the trial has been rescheduled to

begin on May 10, 2021.  Months later, on February 24, 2021, defendants moved for leave to supplement their expert designation of Gruelle with a supplemental expert report.  (Dkt. No. 65.) MVP has also moved for a trial by videoconference, asserting that the motion will be moot if the court excludes Gruelle's testimony and grants MVP's motion for summary judgment.  (Dkt. No. 67.)

For the reasons stated below, MVP's motion to exclude Gruelle's testimony will be granted in part and denied in part; MVP's motion for summary judgment will be denied; and MVP's motion in limine will be granted in part and denied in part.  Defendants' motion to exclude Thompson's testimony will be denied; defendants' motion for leave to supplement will be denied; defendants' motion for a jury view will be granted; and MVP's motion for trial by videoconference is taken under advisement.  Of course, with regard to motions in limine, the court may revisit these rulings at trial, depending on the evidence elicited and the context in which the evidence is offered.

## I.  BACKGROUND

MVP has condemned easements on two contiguous tracts of land owned by defendants.  The first property is identified as VA-RO-060.  The property includes a 3-acre parcel and a 71.208-acre parcel that was acquired by defendants on December 24, 2017.  The property is improved by a single-family residence served by private well and septic.  The property has no frontage on a publicly owned and maintained street.  A private right of way known as Green Hollow Drive provides access to the property.  (*See* Thompson Appraisal of VA-RO-060, Dkt. No. 17-1.)

The second property is identified as VA-RO-061.  The tract includes 37.46 acres of land improved by a single-wide trailer and a dilapidated cabin.  Defendants acquired the tract on November 4, 2005.  The property has no public road frontage and is accessed by Green Hollow Drive.  (*See* Thompson Appraisal of VA-RO-061, Dkt. No. 17-2.)

The subject properties are zoned Agricultural and Residential District.  (Dkt. No. 17-1 at 28; Dkt. No. 17-2 at 22.)  The zoning ordinance for the district allows only low-density development and requires that each subdivided lot have frontage on a publicly owned and maintained street.  Roanoke County Zoning Ordinance, Sec. 30-34-3(A).

The private right of way to access both properties is maintained by defendants and other landowners who use it to access Route 221.  (Dkt. No. 17-4.)  Defendant Kathy Chandler confirmed at the immediate possession hearing that Green Hollow Drive is a private road.  (Dkt. No. 17-5.)  Neither the Virginia Department of Transportation (VDOT) nor Roanoke County maintains the private right of way.  (Dkt. No. 17-3, Exhibit 1.)

## II.  DISCUSSION

### A.  Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance.  Legal standards regarding the same are set forth herein.

#### 1.  Summary judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Rule 56 applies in this case because the rule governing condemnation proceedings in federal court (Rule 71.1) has no provisions governing summary judgment. *See* Fed. R. Civ. P. 71.1(a); *United States v. Tree Removal Rights*, NO. 3:17-CV-128-DMB-RP, 2018 WL 6072008, at *1 (N.D. Miss. Nov. 19, 2018). Summary judgment is appropriately granted in a condemnation case when there is no genuine issue of material fact regarding the fair market value of the property to be taken. *See Tree Removal Rights*, 2018 WL 6072008, at *1; *Equitrans, L.P. v. 0.56 Acres*, No. 1:15-cv-106, 2016 WL 3982479, at *1 (W.D.W. Va. July 22, 2016) ("Several courts have granted summary judgment for plaintiffs in condemnation actions regarding the amount of just compensation owed where there was no genuine issue of material fact regarding the fair market value of the property to be taken.") (collecting cases).

## 2.  Just compensation for partial permanent takings, including severance damages

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts

have employed the concept of "fair market value" to determine the condemnee's loss.  *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942); *see also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act).  The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder."  *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)).  Moreover, "value [of the condemned land] is to be ascertained as of the date of taking."  *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted."  200 F.2d at 102.  The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken."  *Id.* at 103.  The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken."  *Id.* at 104;

5

*see also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

### 3. Damages for perceived market negative influences

In a previous opinion, this court analyzed the law that governs testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See MVP v. 1.23 Acres (Eagle's Nest & Sizemore)*, Civil Action Nos. 7:18-cv-00610, 7:18-cv-00612, 2019 WL 8918915 (W.D. Va. July 12, 2019).  The court will not repeat that entire analysis here, but merely incorporates it by reference.  By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative.  Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property.  In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace.  *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 4. Just compensation for temporary taking

Just compensation for a temporary taking is limited to the market rental value of the property subject to the temporary taking.  *See United States v. Banisadr Bldg. Joint Venture*, 65

6

F.3d 374, 378 (4th Cir. 1995); *see also MVP v. 1.89 Acres (Briarwood)*, Civil Action No. 7:19-cv-

00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019).

**5. Expert testimony**

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony.  Rule

702 states:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine a
> fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first

determines whether the witness qualifies as an expert.  A witness may qualify as an expert on the

basis of "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The expertise

must relate to the areas in which the expert is expressing opinions.  *See Thomas J. Kline, Inc. v.*

*Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989).  Exclusion should occur only where all bases for

expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert

"need not be precisely informed about all details of the issues raised in order to offer an opinion."

*Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of

relevant expertise is nonetheless required.  For example, where experience is one of the bases for a

witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached,

why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted).  Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case.  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same).  The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct.  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).  First, the trial court must ask whether proffered scientific evidence is valid and reliable.  *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000).  Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit."  The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue."  *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite

misleading." *Cooper*, 259 F.3d at 199 (citations omitted).  Indeed, "given the potential

persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to

enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.

1999).  Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in

condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1,

8 (1st Cir. 2009).

**B.  Landowners' Motion to Supplement Their Expert Designation of Gruelle**

Before the court considers MVP's motion to exclude Gruelle's testimony or its motion for

summary judgment, the court must first determine which of Gruelle's reports will be considered –

his initial report or his supplementary report.  The proposed supplementation comes more than nine

months after the deadline for expert disclosures in this case.  It also comes months after the deadline

to respond to MVP's motion for summary judgment, which was filed on June 2, 2020.  Defendants

were required to come forward with admissible evidence in response to MVP's summary judgment

in a timely manner, not months after the deadline for filing a response brief has expired.  (*See*

Scheduling Order, Dkt. No. 1.)  Defendants assert that supplementation of the report is not required

because Gruelle's initial report is sufficient.  They are only providing a supplement because MVP

has misunderstood the report.  Thus, they merely seek to clarify matters for MVP.

Defendants argue that the supplementation is proper under Rule 26(e).  Rule 26(e)(1)

requires a disclosing party to "supplement or correct its disclosure or response . . . if the party learns

that in some material respect the disclosure is incomplete . . . and if the additional or corrective

information has not otherwise been made known to the other parties . . . ."  Here, defendants fail to

assert that disclosure is incomplete.  Indeed, they assert the contrary.  They contend the initial

disclosure and report are complete.  Given this position, defendants' fail to meet the standard for

supplementation, and the court will deny the motion.

## C.  MVP's Motion to Exclude Expert Testimony by Gruelle

Now that the court has determined that it is Gruelle's initial report (Dkt. No. 17-6) under consideration, the court can address the motion to exclude his testimony.  MVP seeks to exclude his testimony on the grounds that a proposed subdivision is not legally permissible and that two of his after-sale comparable sales are unreliable.

In his report, defendants' appraiser, Dennis Gruelle, while acknowledging that Green Hollow Drive, the access road to the property, is private (*id*. at 3) and that the applicable zoning district only allows low density development (id. at 16), asserts that the "subject site is well situated for agricultural, commercial and residential uses, including moderate-density residential development."  (*Id.* at 11.)  He further notes that the zoning district "restricts lots to at least one acre and one hundred and ten feet of linear frontage on a public street."  (Id. at 13.)  Gruelle concludes that the three parcels have the same highest and best use and meet the test of unity of use.  (Id. at 13.)  Then, he concludes that the "highest and best use as vacant would be moderate density development with multiple home sites present."  (*Id.* at 16.)  As improved, Gruelle finds that the highest and best use of the property would be "the existing residential property with ample area and frontage to develop multiple home sites."  (*Id.*)  Overall, Gruelle emphasizes that the properties could be used for "high-end residential development."  (*Id.*)  He bases this opinion on there being "ample" road frontage for subdivision.  (*Id.*)  Ultimately, Gruelle finds a before-take value of $1,619,170 and an after-take value of $953,779, for a difference of $665,391.  (*Id.* at 1.)

For a landowner to claim compensation based on a proposed use, the use must be reasonably probable within the reasonably near future.  *MVP v. 1.85 Acres (Lucki)*, No. 7:19-cv-00147, 2020 WL 1067001, at *5 (W.D. Va. Mar. 5, 2020) (citing *Olson v. United States*, 292 U.S. 246, 255–57

(1934); *United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011)). The test

for determining highest and best use is whether the proposed use is: (1) physically possible, (2)

legally permissible, (3) financially feasible, and (4) maximally productive. *Id.* Zoning ordinances

can be considered when determining if a use is legally permissible. *See United States v. 480.00*

*Acres*, 557 F.3d 1297, 1307 (11th Cir. 2009); *Steffy v. Home Depot, Inc.*, No. 1:06-cv-2227, 2008

WL 5189505, at *8 (M.D. Pa. Dec. 10, 2008) (excluding evidence of proposed highest and best use

that was not permissible under zonings ordinance).

MVP argues that Gruelle's highest and best use is not legally permissible because there is no

public road frontage. It follows then that the lack of that public road access prevents subdivision of

the property. MVP further notes that this led to: 1) an improper valuation (because Gruelle

compared the subject properties to properties that *can* be subdivided: all three of Gruelle's

comparable sales have extensive public road frontage that allows high-density subdivision (Dkt. No.

17-3 at 5 of 10; Dkt. No. 17-6 at 17–25)); and 2) an erroneous finding that the larger parcel doctrine

applied when it does not because of a lack of unity of use.

In response, defendants first contend that MVP prevented itself from understanding

Gruelle's report by failing to depose him. The court rejects this argument. Rule 26 imposes

affirmative obligations to disclose expert opinions. Indeed, "the advisory committee intended that

an expert's written report be so detailed and complete that it would dispense with the need to depose

the expert." *Samsung Elecs. Co. v. NVIDIA Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) (quoting

*Zakit v. Global Linguist Solutions, LLC*, No. 1:14-cv-314, 2014 U.S. Dist. LEXIS 139344, at *7

(E.D. Va. Sept. 30, 2014)); *accord Campbell v. United States*, No. 3:10-cv-363, 2011 U.S. Dist.

LEXIS 12305, at *8 (E.D. Va. Feb. 8, 2011).

Defendants next argue that Gruelle acknowledged that it is a private road, as briefly

referenced on page 3 of his report describing the property, subdivision of the properties is legally permissible because defendants can adjust or relocate their lot lines, and they could legally have a family subdivision with private road frontage.  Defendants claim that Gruelle's opinion regarding subdivision is "simply an acknowledgement that the Chandlers already have 2 additional tax parcels on which residential development can commence without any rezoning or other discretionary approval from Roanoke County."[1]  (Dkt. No. 23 at 10.)

      While far from a model of clarity and certainly fodder for vigorous cross examination, Gruelle's report does not mention that "public road" frontage is available, it does not define "low density" or "moderate density" development, it does not define subdivision, and it does not explain the meaning of "multiple home sites."  The court therefore supposes that defendant's interpretation of the report is feasible.  Furthermore, Roanoke County's zoning and subdivision ordinances do not define "low density" or "moderate density" development.  Additionally, the definition of subdivision in the zoning ordinance includes adjusting or relocating boundary lines.  Thus, the court will not exclude Gruelle's testimony because the proposed subdivision would be legally permissible if this is indeed what he meant in his report.

      As MVP notes, this reading of the report likely affects his opinions on valuation given the comparable sales used that have extensive public road frontage and high-density development, but that will go to the weight of his opinions.  It may also affect the determination under the larger parcel doctrine, but the court will hear from the experts at trial as to this issue.  If the court determines that the three tracts do not constitute a single larger parcel then the valuation as such may not be excluded as irrelevant.

---

[1]  It appears, however, that the subdivisions he provides as examples of the same in the area are not family subdivisions.

MVP further argues that Gruelle's testimony should be excluded because two of his comparable after sales are unreliable.  They assert that the first comparative sale was not encumbered by a pipeline easement at the time of the sale, and in the second comparable sale, the buyer of the property did not know of the encumbrance.  After Sale Comparable 1 occurred on December 27, 2017, when John Fulton and Janice Vanessa Brokaw conveyed property to Venkat and Anitha Reddy.  (Dkt. No. 17-6 at 32.)  MVP did not take possession until March 7, 2018.  (Case No. 7:17-cv-00492, Dkt. No. 582.)  After Sale Comparable 2 occurred on April 26, 2018, when Lenora Montuori conveyed property to Venkat Reddy.  (Dkt. No. 17-6 at 33.)  However, Reddy and his closing attorney have stated under penalty of perjury that they did not know the property was being condemned at the time the deed was recorded.  (Case No. 7:17-cv-00492, Dkt. No. 1247-1 at 11 of 24; Dkt. No. 17-7.)  Therefore, MVP contends, the sales of these properties are not reliable comparative data for use in valuing the subject properties after the take.

Defendants argue that MVP's opposition to After Sale Comparable 1 is "technical," noting that the sale occurred two months after MVP filed its complaint for immediate possession.  *See* Case No. 7:17-cv-00492.  Because the case filing was a matter of public record, defendants insist that the sale was impacted by the prospective easement.  Even so, defendants offer only speculation that the project influenced the sale.  Regarding After Sale Comparable 2, defendants point to the court's ruling that Reddy is not entitled to just compensation for MVP's acquisition of the easement.  (Case No. 7:17-cv-00492, Dkt. No. 1440.)  This ruling does not contradict or undermine Reddy's assertion that he was unaware of the project.  Most importantly, Gruelle stated— incorrectly—that the property involved in After Sale Comparable 2 was "purchased based on arm's length transaction without any unusual conditions."  (Dkt. No. 17-6 at 34.)

Certainly, MVP does not challenge Gruelle's qualifications or that comparable sales is a

13

regularly accepted valuation method.  Thus, typically, a determination of whether comparable sales

are truly comparable and to what extent they are comparable goes to the weight and not the

admissibility of expert testimony.  *See, e.g.*, *Jones*, 2019 WL 4007924, at *3; *Baker*, 2019 WL

4306981, at *5.   However, Rule 702 does require that the expert's testimony is based on sufficient

facts or data.  Moreover, the court has an obligation under *Daubert* to act as a gatekeeper and ensure

that any testimony concerning scientific, technical, or other specialized knowledge offered in

support of a party's claim is "not only relevant, but reliable."  509 U.S. at 589; *Kuhmo Tire Co. v.

Carmichael*, 526 U.S. 137, 147 (1999) (quoting same).

Here, Gruelle's use of After Sale Comparable 1 and 2 goes to admissibility.  Gruelle's

information about those sales, or lack thereof, is simply wrong or speculative.  The data is irrelevant

and unreliable given the purpose for which he used the data.  Thus, the court will exclude Gruelle's

testimony with regard to After Sale Comparable 1 and 2.  MVP does not assert that any remaining

after sale comparables are insufficient or unreliable, so he may rely upon any other after sale

comparables.

### C.  MVP's Motion in Limine

#### 1.  Evidence of fear and stigma of pipelines and claims that buyers would not purchase the Property because of the Pipeline

Because of this court's previous rulings, Gruelle specifically notes in his report that he

ignored market perception and fear.  As he recognized and this court has previously ruled, fear of

pipelines when divorced from a link to diminution in market value is inadmissible.  See *Mountain

Valley Pipeline, LLC v. 1.85 Acres (Lucki)*, No. 7:19-cv-0147-EKD, 2020 WL 1067001, at *6

(W.D. Va. Mar. 5, 2020) (excluding evidence of fear and stigma of pipelines because landowner

could not link the evidence to a diminution in market value); *Mountain Valley Pipeline, LLC v. 1.81

Acres (Jones)*, No. 7:18-cv-0151-EKD, 2019 WL 3945272, at *5 (W.D. Va. Aug. 21, 2019)

(excluding evidence of explosion area because landowners could not link the evidence to a diminution in market value); *Mountain Valley Pipeline, LLC v.1.30 Acres (Baker)*, No. 7:18-cv-0607-EKD, 2019 WL 4306981, at *5 (W.D. Va. Sept. 11, 2019) (same).  As to claims that buyers would not purchase the property, this opinion is similar to the one given in *Lucki* that was excluded because "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony."  2020 WL 1067001, at *6.  Moreover, Gruelle provides no link to diminution in market value.  *Id.*  Defendants do not respond to MVP's argument that evidence of HUD regulations is inadmissible, so the court will exclude that evidence.

For these reasons, evidence of fear and stigma, claims that buyers would not purchase the properties because of the Pipeline, and HUD regulations are excluded.

## 2. Claims that the Pipeline is dangerous or unsafe, evidence of other pipeline accidents or incidents

The court has excluded this type of evidence for similar reasons and will do so again in this case.  *See Doe Creek*, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019) (excluding evidence because expert did not "rely on market evidence connecting pipeline safety, accidents, and fear and stigma associated with pipeline easements to diminution in value"); *Baker*, 2019 WL 4306981, at *5 (excluding evidence about high consequence areas (HCAs) and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property"); *MVP v. 1.81 Acres (Jones I)*, Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *5 (W.D. Va. Aug. 21, 2019) (excluding testimony because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative.  Moreover, there must be a nexus between those hazards and/or the public perception in

the marketplace . . . and a diminution in value of the property").

Defendants agree not to offer evidence of other pipeline accidents or incidents.  Defendants argue that they should be able to counter MVP evidence on the issue of safety, but MVP states that it will not introduce such evidence.[2]  Defendants also wish to introduce evidence of pipeline markers on the property.  MVP does not object to evidence that there will be pipeline markers on the property, but MVP does object to evidence of any statements or warnings on the markers.  Gruelle does not mention pipeline markers or their contents in his report, much less prove a connection to diminution in value.

For these reasons, the court will grant MVP's motion to exclude claims that the Pipeline is dangerous or unsafe and evidence of other pipeline accidents or incidents.  The court will allow evidence that there are, or will be, pipeline markers on the property.  Regarding any desire by landowners to introduce evidence of the text on the markers, MVP and landowners have failed to provide the court with information about the text on the markers.  Lacking this information, the court denies the motion regarding this issue without prejudice.

### 3. Evidence of alleged impacts and hazards from construction

This motion does not, as defendants contend, seek to exclude evidence of the property rights taken in this case.  (Dkt. No. 24 at 10–11.)  Instead, MVP is challenging evidence of reports concerning alleged hazards and hydrogeological construction impacts posed by the Pipeline that Gruelle cites in his appraisal, as well as any evidence that the project will cause soil disruption and compaction on the remainder of the property.  This evidence is excluded because possible impacts and hazards are not inherent in the easement.  *See Lucki*, 2020 WL 1067001, at *7 (excluding evidence of uncertain impact to springs, wells, drainage, and soil compaction because compensable

---

[2]  If MVP opens the door on this issue, defendants would be allowed to present impeachment evidence.

loss in eminent domain proceedings is limited to risks that are inherent in the easement). MVP

agrees that defendants can recover for any permanent impact to the land within the easement that

results from construction. To that extent, MVP's motion will be granted.

### 4. Evidence of appraisals of other properties

Defendants argue that this evidence should be admissible pursuant to Rule 703. *See* Fed. R.

Evid. 703 (Bases of an Expert's Opinion Testimony). Rule 703 provides that an expert "may base

an opinion on facts or data in the case that the expert has been made aware of or personally

observed," and if "experts in the particular field would reasonably rely on those kinds of facts or

data in forming an opinion on the subject, they need not be admissible for the opinion to be

admitted," but "if the facts or data would otherwise be inadmissible, the proponent of the opinion

may disclose them to the jury only if their probative value in helping the jury evaluate the opinion

substantially outweighs their prejudicial effect." *Id.* Defendants' argument does not respond to

MVP's argument that the substance of other appraisals is inadmissible hearsay. Rule 703 combined

with Fed. R. Evid. 702 (Testimony by Expert Witnesses) does not "permit the admission of

materials, relied on by an expert witness, for the truth of the matters they contain if the materials are

otherwise inadmissible. Rather, Rule 703 merely permits such hearsay, or other inadmissible

evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's

opinion." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994). Other

appraisals are also inadmissible because there is no evidence that the other properties are

comparable to defendants' properties. *Lucki*, 2020 WL 1067001, at *7 (excluding evidence of

appraisals of other properties because defendant offered no evidence that the other properties are

comparable to the property at issue).

### 5. Evidence of the appraisal prepared to estimate security

Defendants argue that evidence of the appraisal prepared by Jared Schweitzer and Samuel Long to estimate security for defendants' parcels is admissible because it supports defendants' evidence and contradicts MVP's appraiser, Joseph Thompson.  Defendants do not respond to MVP's argument that the report is inadmissible hearsay.  *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("Because an expert witness is charged with the duty of giving *his* or *her* expert *opinion* regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.") (emphasis in original); *Wilson v. Hartford Ins. Co.*, No. 2:10-cv-993, 2011 WL 2670199, at *2 (W.D. Wash. July 7, 2011) ("Mr. Wilson is mistaken in his belief that a party's expert report is equivalent to a party's admission within the meaning of Fed. R. Evid. 801(d)(2).  An expert is expected to form her own opinions, not the opinions of the party who hired her.").  Moreover, because Schweitzer and Long are not witnesses in this case, their report is not admissible as a prior inconsistent statement.  *See* Fed. R. Evid. 613.  The security appraisal is also not admissible under Rule 703 because Gruelle did not base his damages opinion on the security appraisal.

For these reasons, the Schweitzer and Long security appraisal is inadmissible as defendants intend to offer it.

### 6.  Opinions of persons not disclosed as an expert

Defendants argue that Rule 703 allows Gruelle to testify that his opinion on the highest and best use is consistent with the opinions of Larry Florin, Linda DeVito, and others who have not been disclosed as experts.  (Dkt. No. 17-6 at 16; Dkt. No. 24 at 17–18.)  Rule 703 does not allow an expert to bolster his opinion by testifying about the opinions of others.  *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 n.17 (4th Cir. 2017) ("[A]n expert witness may not bolster the reliability of his own opinion by testifying about a non-testifying expert witness' credentials and opinion.").

Therefore, MVP's motion will be granted as to opinions of persons not disclosed as experts.

**7.  Evidence of possible utility corridor**

Defendants argue that the jury should be informed that state and federal regulations require future utility providers to consider the property for additional easements.  The possibility of this use is speculative, and Gruelle has no evidence linking it to market value.  *See Baker*, 2019 WL 4306981, at *6 (excluding evidence of utility corridors when the speculative nature of the testimony was conceded).  If such a taking occurs in the future, the company taking the easement will be responsible for just compensation.

**8.  Examination of Joseph E. Thompson concerning vacated order**

Defendants do not oppose this motion but reserve the right to use it for impeachment. Because MVP does not intend to offer this testimony, the court will grant MVP's motion.

**9.  Evidence of settlement offers and communications**

Defendants do not oppose this motion.

**10.  Evidence of amounts paid for easements on other properties**

Defendants agree not to introduce this evidence except for the amount MVP paid to Venkat and Anitha Reddy for the easements on VA-RO-061.  This is one of Gruelle's comparable sales in his expert report, which the court has excluded.  Even if the court had not excluded the sale, a jury does not need to know the amount paid for an easement to understand a sale.  Moreover, it is "well-established that sales to potential condemnors are involuntary sales and as such cannot establish the fair market value of comparable property."  *Bajwa v. Sunoco, Inc.*, 329 F. Supp. 2d 726, 733 (E.D. Va. 2004).  The court will grant MVP's motion to exclude evidence of amounts paid for easements on other properties.

**D.  Defendants' Motion to Exclude Testimony by Joseph Thompson**

Paired Sales

MVP's expert, Joseph Thompson, used a sales comparison approach and prepared separate appraisals for the properties identified as VA-RO-060 and VA-RO-061.  (Dkt. No. 27-1, MVPVA 007358, 007368.)  In the "after-taking" scenario, Thompson used a paired sales analysis to determine what adjustment to make to his comparable sales for the pipeline easement.  (*Id.* at MVPVA 007363–007368.)  In a "paired sales" analysis, the appraiser "identifies pairs of sales that are as similar as possible for all but one factor.  When the sales are compared, the difference in price is best explained by that particular feature that distinguishes the properties."  *Jones*, 2019 WL 4007924, at *3.  The goal of this analysis is "to isolate the effect that a certain feature, such as a natural gas pipeline, has on a property's market value."  *Id.*

Thompson selected four "impacted sales," sales of tracts that had a 50-foot permanent easement for a natural gas transmission line owned by East Tennessee Natural Gas Company.  (*Id.* at MVPVA 007363–007368.)  Each sale involved single-family residential properties.  (*Id.*)  Each sale was in the same market area as the Chandler property—Christiansburg, Roanoke, and Salem.  (*Id.*)

After reviewing all single-family sales in the market area for the relevant time, Thompson selected four sales that were not encumbered with a pipeline easement.  (*Id.* at MVPVA 007363.)  Each of these sales were "considered to be most similar in the market to compare to the affected parcel."  (*Id.*)  Thompson "selected for comparison to each encumbered sale the single most similar sale that was not so encumbered."  (Declaration of Joseph Thompson (Thompson Decl.) ¶ 2, Dkt. No. 36-1.)

Thompson then selected four additional unencumbered sales that he determined were superior to the corresponding encumbered sales.  (Dkt. No. 27-1 at MVPVA 007363.)  A superior

sale was analyzed to "substantiate a maximum arguable diminution factor." (*Id.*) Thompson explains that he did this to "determine the upper end of any possible diminution in value caused by the pipeline easement on the encumbered sale." (Thompson Decl. ¶ 3.) Thompson did not make a quantitative adjustment to the superior sales.

Pair Set 1 compared an encumbered property in Christiansburg that sold for $210,000 with a similar unencumbered property in Christiansburg that sold for $227,586, indicating an 8% diminution in value because of the pipeline. (Dkt. No. 27-1 at MVPVA 007364.) The encumbered property was also compared to a superior unencumbered property in Christiansburg that sold for $268,000, a 22% differential. (*Id.*)

Pair Set 2 compared an encumbered property in Roanoke that sold for $256,000 with a similar unencumbered property in Roanoke that sold for $255,000, indicating no diminution in value. (*Id.* at MVPVA 007365.) The encumbered property was also compared to a superior unencumbered property in Roanoke that sold for $290,000, a 12% differential. (*Id.*)

Pair Set 3 compared an encumbered property in Christiansburg that sold for $293,000 with a similar unencumbered property in Christiansburg that sold for $327,900, indicating an 11% diminution in value. (*Id.* at 007366.) The encumbered property was also compared to a superior unencumbered property in Christiansburg that sold for $335,000, a 13% differential. (*Id.*)

Pair Set 4 compared an encumbered property in Salem that sold for $189,000 with a similar unencumbered property in Salem that sold for $189,000, indicating no diminution in value. (*Id.* at 007367.) The encumbered property was also compared to a superior unencumbered property in Salem that sold for $227,000, a 17% differential. (*Id.*)

"Utilizing this methodology, a range for each affected sale [was] indicated from which a well-supported adjustment can be deduced." (*Id.* at 007363.) "Considering the location of the

pipeline and potential impact on the property," Thompson concluded that a 15% adjustment was appropriate for the MVP easement. (*Id.* at 007368.) Thompson applied this adjustment to each of his comparable sales to estimate the value of the property after the taking. (*Id.* at 007368–007369.)

Defendants argue that Thompson's after-take values are fundamentally flawed because he failed to properly apply approved appraisal methodology for the use of paired sales. Defendants acknowledge the court's prior reasoning that challenges to the sufficiency of comparison between paired sales generally goes to the weight of the evidence. *See, e.g.*, *Jones*, 2019 WL 4007924, at *3; *Baker*, 2019 WL 4306981, at *5. Defendants state that they are not challenging the similarity or lack of similarity between Thompson's matched pair sets, but instead challenge the flawed methodology he employed in performing his paired sales analysis due to his failure to make adjustments to the various properties he analyzed. However, Thompson did not adjust anything because it is his position that nothing needed to be adjusted. Defendants do not provide any evidence or factual support for the proposition that adjustments were necessary for Thompson to conduct a reliable paired sales analysis.

In support, defendants note a vacated ruling by this court that excluded an opinion given by Thompson in *MVP v. 10.67 Acres (Doe Creek)*, Case No. 7:18-cv-00609. (*See* Dkt. No. 55.) MVP objects to defendants' citation to this ruling because it has been vacated. In any event, the issues in *Doe Creek* were different because adjustments were required with regard to those sales. Here, it is asserted that no adjustments are required. For these reasons, defendants' motion to exclude Thompson's report will be denied as to these paired sales.

Rebuttal Report

Defendants also move to exclude Thompson's rebuttal report because the opinions do not comply with Rule 26(a)(2)(B) or the Uniform Standards of Professional Appraisal Practice

(USPAP). The court will deny this part of the motion and allow the rebuttal report.

The disclosures are letters to MVP counsel Seth Land, and defendants maintain that the letters constitute neither appraisal reports, or appraisal review reports under USPAP, do not fulfill the requirements of Rule 26(a)(2)(B) of providing a written report, and are the result of MVP's counsel interfering in the full reporting of Thompson's opinions in an effort to disclose to the jury only those opinions which would be best for MVP's position at trial.

Thompson, however, is not required to file a complete review appraisal and can limit his rebuttal report to the errors made by Gruelle in his highest and best use analysis and comparable sales. Thompson did not need to file a rebuttal report on subjects about which he does not intend to testify. MVP also states that counsel did not write Thompson's rebuttal report, and the opinions are Thompson's own opinions, which Thompson states in his letter. Additionally, the USPAP Rule 4-1 allows written or oral reports, and defendants' challenge based on USPAP goes to weight, not admissibility.

**E. MVP's Motion for Summary Judgment**

In a condemnation action, the landowner has the burden of proving the amount of just compensation owed by the condemnor. *See United States ex rel. TVA v. Powelson*, 319 U.S. 266, 273 (1943); *United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991). MVP argues that defendants have not met their burden of proof because Gruelle's opinions are inadmissible. *See MVP v. 1.89 Acres (Briarwood)*, No. 7:19-cv-00078, 2019 WL 6467833, at *3–4 (W.D. Va. Dec. 2, 2019) (granting summary judgment to condemnor where landowners did not provide admissible evidence on the issue of just compensation). Accordingly, MVP contends that the court should enter judgment and award compensation in the amount determined by MVP's expert, Joseph Thompson. As noted above, the court has not excluded Gruelle's testimony, so the motion will be

denied.[3]

**F.  Defendants' Motion for a Jury View**

Defendants move for a jury view of the subject property during trial.  MVP does not object.

While a jury view is not required by law, the court agrees that an in-person jury view is helpful,

where practicable, because the jury is to determine the just compensation for the taking.  Thus, the

court will grant the motion for a jury view subject to the conditions during the trial dates regarding

logistics (including, but not limited to, access to the property, weather, and transportation), security

(including, but not limited to, the health and safety of the jurors, parties, counsel, and court

personnel), and time constraints.  Should the court determine that an in-person jury view is not

practicable at the time of trial, then the parties will have the opportunity to use photographs, or pre-

recorded or live video.

III.  CONCLUSION

For the reasons stated herein, MVP's motion to exclude the testimony by Dennis Gruelle

(Dkt. No. 16) is GRANTED IN PART and DENIED IN PART—it is granted with respect to After

Sale Comparable 1 and 2 but is denied with respect to the proposed subdivision; MVP's motion for

summary judgment (Dkt. No. 18) is DENIED; MVP's motion in limine (Dkt. No. 20) is GRANTED

IN PART and DENIED IN PART—it is granted as to part one (evidence of stigma, claims that

buyers would not purchase because of Pipeline, and HUD regulations), granted in part as to part two

(Pipeline is dangerous or unsafe, other pipeline accidents or incidents), denied in part as to part two

(evidence of pipeline markers), and denied in part without prejudice as to part two (information

about text on pipeline markers), granted as to part three (evidence of alleged impact of hazards from

---

[3] Even if Gruelle's testimony had been excluded, defendants state that they would rely on their own testimony regarding valuation, upon the jury view, and upon their challenge to Thompson's testimony.  Given the court's ruling, it need not decide these issues.  MVP contends that the Chandlers cannot testify regarding value for various reasons, including untimely disclosure, but no motion in limine is before the court as to this issue.

construction not inherent in the easement), granted as to part four (appraisals of other properties), granted as to part five (evidence of appraisal prepared to estimate security), granted as to part six (opinions of persons not disclosed as experts), granted as to part seven (evidence of possible utility corridor), granted as to part eight (examination of Joseph E. Thompson regarding vacated order), granted as to part nine (evidence of settlement offers and communications), and granted as to part ten (amounts paid for easements on other properties); defendants' motion to exclude testimony by Joseph E. Thompson (Dkt. No. 26) is DENIED; defendants' motion for leave to supplement (Dkt. No. 65) is DENIED; defendants' motion for a view of the subject property (Dkt. No. 33) is GRANTED subject to conditions on the dates of trial; and MVP's motion for trial by videoconference (Dkt. No. 67) is TAKEN UNDER ADVISEMENT.

The clerk of court is directed to send copies of this memorandum opinion and order to counsel of record.

Entered: March 31, 2021.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge